IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:05cr155-T |
| | ) | (WO) |
| LEIGH ROHAN | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, Leigh Rohan ("Rohan"), was charged on June 29, 2005, in a single count indictment with knowingly and willingly combining, conspiring, confederating and agreeing to knowingly and intentionally distribute and possess with intent to distribute approximately 50 grams of methamphetamine and more than 266.3 grams of a mixture containing a detectible amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.  On August 19, 2005, Rohan filed a motion, premised upon the Fourth and Fifth Amendments[1] to the United States Constitution, to "suppress all evidence including illegal substances, paraphernalia, and evidence seized and statements made on the (sic) June 17, 2004."  (Doc. # 38).  Claiming that her initial seizure and subsequent search of her vehicle were unsupported by probable cause or without warrants, Rohan contends that all evidence seized and statements made should be suppressed as violative of the Fourth and Fifth Amendments.

On August 26, 2005, the Court held an evidentiary hearing on the suppression motion. For the reasons which follow, the Court concludes that the motion to suppress is due to be

---

[1] In her motion, Rohan claims that the seizure of evidence from the vehicle she was driving and the taking of statements from her violated "the Fourth, Fifth, Seventh, Eighth and Fourteenth Amendments..."

denied.

## FACTS[2]

On June 17, 2004, a private citizen found a black bag on Interstate 65, north of Montgomery. Expecting to find a laptop computer, the citizen opened the bag. Much to his dismay, the bag appeared to contain illegal narcotics. The citizen took the bag to the Prattville Police Department. At the police department, a field test revealed that the contraband in the bag was methamphetamine.

Armed with that information and with the citizen, officers Bruce Little, David DeJohn and Tom Reid, went to the area where the citizen discovered the bag. In close proximity to the location of the black bag, the police discovered other evidence related to narcotics. While the officers were examining the crime scene for additional evidence, defendant Rohan and co-defendant Nicole Broadfoot arrived in Rohan's car. Rohan initially pulled in behind Officer DeJohn's vehicle but she then came around his car and pulled into the area the officers were searching – what was essentially the middle of the crime scene.

Officer DeJohn approached the car to speak to Rohan. As soon as DeJohn approached Rohan's vehicle, he smelled the odor of burned marijuana coming from the vehicle. After DeJohn smelled marijuana, he asked Rohan her name. He recognized her name as one previously mentioned in another methamphetamine investigation. DeJohn asked Rohan to step out of the car. Rohan claimed that she was looking for a friend who had broken down

---

[2] The parties agreed to, at the suppression hearing, the United States proffering evidence and the defendant cross-examining Officer DeJohn.

on the side of the interstate. DeJohn asked Rohan for permission to search the vehicle. Initially, Rohan indicated that she would rather not consent. DeJohn began to radio for a narcotic dog to be brought to the scene, but before he could complete the request, Rohan gave her consent to DeJohn to search her vehicle.

The search uncovered methamphetamine and drug paraphernalia as well as a small amount of marijuana in Rohan's purse which was on the floorboard. Rohan was then placed under arrest and transported to the Millbrook Police Department. After being advised of her rights, Rohan acknowledged that she had been told methamphetamine had been thrown from a car window along the interstate and that she was there looking for the bag containing the drugs.[3]

## DISCUSSION

The defendant argues that the initial stop of her was unreasonable because it was not supported by probable cause or a valid warrant based on probable cause. The undisputed evidence demonstrates, however, that there was no traffic stop. Rather, Rohan arrived on the crime scene as the officers were searching for evidence. Consequently, there can be no Fourth Amendment violation regarding a traffic stop that did not occur.

Undisputedly, the initial encounter between DeJohn and Rohan was voluntary. Rohan's argument that the officers should not have talked to her borders on the ridiculous.

---

[3] Apparently, earlier in the day, during a routine traffic stop, an individual named Steve Wilson fled from Montgomery police officers. During flight, Wilson's companion threw a bag containing drugs from their vehicle as they traveled up Interstate 65. Wilson told an individual named Jake, who in turn told Rohan, that the bag contained narcotics and was on the side of the interstate.

"Mere questioning . . . is neither a search nor a seizure." *United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001).

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. . . . Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they doe not induce cooperation by coercive means.

*United States v. Drayton*, 536 U.S. 194, 201-02 (2002). *See also, United States v. Baker,* 290 F.3d 1276 (11th Cir. 2002). Once Rohan arrived on the scene, DeJohn's approach of her was in no way improper. Of course, Rohan was under no obligation to respond to his questioning. "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Drayton*, *quoting INS v. Delgado*, 466 U.S. 210, 216 (1984).[4]

As soon as DeJohn smelled the strong odor of marijuana coming from the car, he had probable cause to search Rohan and the car.[5] *See United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) ("[A]gent's suspicions rose to the level of probable cause, when, as the door stood open, he detected what he knew from his law enforcement experience to be the

---

[4] In *United States v. Baker*, 290 F.3d 1276 (11th Cir. 2002), the court relying upon *Terry v. Ohio*, 392 U.S. 1 (1968), and *Florida v. Bostick*, 501 U.S. 429 (1991) held that the crucial test is whether under the circumstances the police conduct would communicate to a reasonable person that he was not at liberty to ignore the officer and go about his business. Rohan presented no evidence that her liberty was restrained.

[5] DeJohn testified at the suppression hearing that he smelled marijuana "too many times" to count.

odor of marijuana."). When DeJohn discovered the drugs and drug paraphernalia in the vehicle, he then had probable cause to arrest Rohan.

In the alternative, absent probable cause, law enforcement officials may briefly detain a person as part of an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968). *See also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993). "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

In addition, DeJohn was entitled to "take reasonable actions, based upon the circumstances, to protect [himself] during investigative stops." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989*)*.

> It is well established that officers conducting a traffic stop may "take such steps as [are] reasonably necessary to protect their personal safety." *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 331 (1985). This includes conducting a protective search of the driver, *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (177), the passengers, *id*., and the vehicle, *Michigan v. Long*, 463 U.S. 1032, 1049-51, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). . . .

*Purcell*, 236 F.3d at 1277-78. The smell of marijuana emanating from Rohan's vehicle gave DeJohn reasonable suspicion that persons in the car were engaged in criminal activity. *See United States v. Griffin*, 109 F.3d 706 (11th Cir. 1997) (the strong smell of marijuana coming from the car was sufficient reasonable suspicion for officers to detain defendants.)

Thereafter, DeJohn asked Rohan to step out of the car.[6] *See Hastamorir*, 881 F.2d at 1556. It was reasonable for DeJohn to question Rohan, particularly because Rohan arrived on a crime scene during an investigation in a vehicle reeking of marijuana.

Thereafter, there was nothing inherently wrong with DeJohn asking Rohan for permission to search the vehicle. "An officer conducting a routine traffic stop may request consent to search the vehicle." *Purcell*, 236 F.3d at 1281. "A consensual search is constitutional if it is voluntary; if it is the product of an "essentially free and unconstrained choice."" *Id*. Rohan gave consent to search. During the search, DeJohn discovered methamphetamine, drug paraphernalia and marijuana. The court concludes that Rohan's consent to search was voluntary and not the product of any force or coercion. *See generally United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001). Consequently, the court finds that the defendant's rights secured by the Fourth Amendment were not violated by DeJohn's questioning, arrest and subsequent search of her vehicle.

The defendant also seeks suppression of statements she made to police officers which she argues were made before she was arrested and without being read the *Miranda* warnings.[7] The "Fifth Amendment privilege against self-incrimination prohibits admitting

---

[6] In *Pennsylvania v. Mimms*, 434 U.S. 106 (1997), an officer directed a motorist stopped for a minor traffic violation to get out of his car, even though the officer had no reason to believe the motorist was dangerous or armed. The Court held that concern for the officer's safety outweighed the slight intrusion against the liberty of the motorist. *Mimms,* 434 U.S. at 110-11. It was reasonable therefore in this case for the officer to detain the defendant "in order to determine [her] identity or to maintain the status quo momentarily while obtaining more information . . . in light of the facts known him at the time." *Kapperman*, 764 F.2d at 791-92

[7] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

6

statements given by a suspect during 'custodial interrogation' without a prior warning." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). It is undisputed that Rohan did not give any statements while she was at the crime scene. Further, it is undisputed that Rohan was in custody at the time she made incriminating statements. Finally, it is undisputed that before she gave any statements at the Millbrook police department, she was given *Miranda* warnings prior to making any incriminating statements. Given these facts, it is clear that Rohan's Fifth Amendment claim lacks merits.

## CONCLUSION

Accordingly, for the reasons stated, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **September 12, 2005**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of*

7

*Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 29th day of August, 2005.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE